IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIK BALLARD, | : | |
|       Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-4740 |
| | : | |
| THE CITY OF PHILADELPHIA et al., | : | |
|       Defendants. | : | |
| | : | |

**Jones, II    J.**                                                                                              **April 9, 2015**

## MEMORANDUM

      In his Complaint, (Dkt No. 1, Complaint [hereinafter Compl.]), Malik Ballard ("Plaintiff") sued the City of Philadelphia ("the City"), Police Commissioner Charles Ramsey ("Cmmr Ramsey"), Detective Edward Keppel ("Det. Keppel"), Detective Palumbo ("Det. Palumbo"), Officer Edward M. Ashburn ("P.O. Ashburn"), and various John Doe Defendants.

      Plaintiff alleges that (1) Defendant Detective/Officers subjected Plaintiff to excessive force, false arrest, false imprisonment, malicious prosecution, and violation of Plaintiff's due process and equal protection rights in violation of 42 U.S.C. § 1983 and § 1985, (Count I, Compl. ¶¶ 32-34); (2) various theories of liability for a *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) claim against the City of Philadelphia; (3) various state law causes of actions against the individual Defendants. (Count II, Compl. ¶¶ 38-39.) Plaintiff demands compensatory and punitive damages, attorneys' fees and costs, and "Injunctive Relief to amend the Policy that hides the names of Police witnesses." (Compl. ¶ 39.)

      Defendants City of Philadelphia, Cmmr Ramsey, and P.O. Ashburn (hereinafter "moving Defendants") have moved for partial judgment on the pleadings on (1) all counts against the City of Philadelphia; (2) all counts against Cmmr Ramsey in his official and individual capacities; (3) all counts against P.O. Ashburn in his official and individual capacities. (Dkt No. 14, Defs' Motion for Judgment on the Pleadings [hereinafter MJP].) After a thorough review of the record, including moving Defendants' Motion for Judgment on the Pleadings, Plaintiff's Response, (Dkt No. 15, Pl.'s Resp. to Defs' MJP [hereinafter Pl. Resp.]), and moving Defendants' Reply, (Dkt

No. 18, Defs' Reply Brief in Support of Defs' MJP [hereinafter Defs' Rep.]), the Court will GRANT IN PART AND DENY IN PART moving Defendants' Motion.

### I.     Standard of Review

A party may move for judgment "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *S.B. v. United of Omaha Life Ins. Co.,* Civ. No. 13–1463, 2013 WL 2915973, at *3 (E.D. Pa. 2013) (citing *Bayer Chemicals Corp. v. Albermarle Corp.,* 171 Fed. App'x 392, 397 (3d Cir.2006); *Jablonski v. Pan Amer. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir.1988)). "In evaluating a Rule 12(c) motion, a court must view the pleadings in the light most favorable to, and draw all inferences in favor of, the nonmoving party." *Jablonski,* 863 F.2d at 290. The court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

### II.    Factual Background
####    a.  The Underlying Incident

The Court views the facts in the light most favorable to Plaintiff. On October 11, 2012, the complaining witness gave a statement to Det. Keppel and Det. Palumbo indicating Plaintiff was guilty of a crime. (Compl. ¶ 21.) That same day, the complaining witness was arrested and held on unrelated charges. (Compl. ¶ 22.) Plaintiff alleges that Defendant Detectives "pressured the complaining witness to identify Plaintiff in the underlying criminal case in exchange for leniency." (Compl. ¶ 23.) Moreover, Plaintiff alleges that the Defendant Detectives "were aware that the October 11, 2012 statement they obtained contradicted a previous statement the complaining witness gave to other detectives." (Compl. ¶ 24.)

Defendants were "aware of this exculpatory evidence and intentionally withheld it thereby making material misrepresentations and omission in the affidavit of probable cause they presented to obtain an arrest warrant for plaintiff." (Compl. ¶ 25.) Based on this incomplete information, an arrest warrant was issued. (Compl. ¶ 17.)

On November 9, 2012, Plaintiff was arrested and charged with attempted murder, aggravated assault, conspiracy to commit aggravated assault, possession of a firearm, simple assault, reckless endangerment and related charges, for an incident dating from April 2012. (Compl. ¶ 17.) On November 10, 2012, Plaintiff was given a preliminary arraignment and bail

was set. (Compl. ¶ 18.) On November 27, 2012, at a preliminary hearing, all charges but one were dropped. (Compl. ¶ 19.) On December 18, 2012, Plaintiff was formally arraigned. (Compl. ¶ 26.)

On February 20, 2013, and again on April 3, 2013, Plaintiff's trial was continued. (Compl. ¶¶ 27-28.) On April 16, 2013, the Commonwealth moved for *nolle prosequi*. (Compl. ¶ 29.) It is Plaintiff's contention that the Commonwealth was motivated to move for *nolle prosequi* because of recordings of prison conversations in which the complaining witness exonerated Plaintiff. (Compl. ¶ 31.) Plaintiff was not released until June, 2013. (Compl. ¶ 31.)

At all relevant times, Cmmr Ramsey was the Commissioner, and Det. Keppel, Det. Palumbo, and P.O. Ashburn were employees of the Philadelphia Police Department. (Compl. ¶¶ 12-15.)

### b. The Policy

Plaintiff's claims concern a 2009 Philadelphia Police Department Overtime Management Memorandum (09-01) dated January 28, 2009, adopted while Cmmr Ramsey was in office, which states the following: "Platoon commanders will be required to review and initial all arrest and investigative reports, including [Preliminary Arraignment Reporting System] reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed." (Compl. ¶ 1, Ex. A.) The Philadelphia Police Department implemented a Standard Operating Procedure ("SOP") stating that: "Investigative supervisors shall review search and arrest warrants to ensure that the above practices are followed, and that each component of case management is handled by as few police personnel as possible, as needed to the successful prosecution of the case." (Compl. ¶ 2, Ex. B.)  Throughout this Memorandum of Law, the Court will refer to both procedures jointly as "the Policy."

### III. Discussion
### a. All claims against Cmmr. Ramsey and P.O. Ashburn in their "official capacities" are dismissed.

Claims against Cmmr Ramsey in his official capacity, and P.O. Ashburn in his official capacity, are the self-same as suits against the City of Philadelphia. "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief."

3

*Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (citing *Monell*, 436 U.S. at 690 n. 55). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66 (quoting *Monell*, 436 U.S. at 690, n. 55); *see also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 130 (3d Cir. 1985). Thus, claims against Cmmr Ramsey in his official capacity and P.O. Ashburn in his official capacity fail as a matter of law. *Accord Munson v. City of Philadelphia*, 2009 WL 2152280, at *4 (E.D. Pa. 2009).

> **b. Moving Defendants' Motion for Judgment on the Pleadings on Plaintiff's claims against the City of Philadelphia is granted in part and denied in part.**
>
> **i. Legal Standard**

Municipal liability arises under section 1983 only when a constitutional deprivation results from an official policy or custom. *Monell*, 436 U.S. at 691-94. To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a constitutional right. *See Harvey v. Plains Twp. Police Dep't,* 635 F.3d 606, 609 (3d Cir.2011). Under *Monell*, a plaintiff can show that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Beyond proving that an unlawful policy existed, a plaintiff must also demonstrate that "such a policy or custom was the proximate cause of the injuries suffered." *Patterson*, 2009 WL 1249968, at *10 (citing *Bielevicz*, 915 F.2d at 850). "'A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom.'" *Bielevicz*, 915 F.2d at 851 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

> **ii. Analysis**

Plaintiff alleges multiple theories of liability related to its *Monell* claim. In Defendants' Motion for Judgment on the Pleadings, Defendants argue that all of these theories of liability should be dismissed for failure to show a causal link between the Policy and the alleged constitutional violations. (MJP at 2-3.) In Plaintiff's Response, Plaintiff focuses solely on a theory of liability that the Policy caused Defendants to withhold "exculpatory evidence in the

4

form of 'a previous statement the complaining witness gave to other detectives,'" thereby violating Plaintiff's right to be free from incarceration. (Pl. Resp. at 8-10.)[1] As Plaintiff explains, "this matter has a clear causal link between the unlawful and unconstitutional incarceration of plaintiff (by withholding a prior statement made by complaining witness) and the policies of withholding police officer witnesses names/material information about incident unless necessary for the successful outcome of the case or needed for the successful prosecution of the case." (Pl. Resp. at 9-10.)

Plaintiff has sufficiently pointed to two procedures, collectively "the Policy." (Compl. ¶ 1, Exs A-B.) The Court next must address whether Plaintiff has pled an underlying constitutional violation. Construing the facts in the light most favorable to Plaintiff, the Court accepts that Plaintiff was incarcerated on the basis of the complaining witness's coerced, false statement. Further, Defendants excluded all evidence of the complaining witness's prior inconsistent statement on Defendants' probable cause statement, including the identity of the detectives who had observed the prior inconsistent statement (even though both the prior inconsistent statement and the identities of the detectives were known to Defendants). An arrest warrant for Plaintiff was issued on the basis of Defendants' erroneous probable cause statement. The Policy was in effect during said time and it was known by police personnel that the Policy must be obeyed.

An officer's withholding of exculpatory evidence – like a prior inconsistent statement from the complaining witness- from a magistrate or judge during a probable cause hearing can be grounds for a constitutional violation of Plaintiff's right to be free of unlawful arrest. *See Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000). "[A] police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000). "[O]missions are made with reckless disregard if an officer recklessly omits facts than any reasonable person would know that a judge would want to know." *Wilson*, 212 F.3d at 787 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (internal citations omitted). Thus, Plaintiff's theory that the Policy encourages the exclusion of

---

[1] The Court holds that all other theories of liability of have been abandoned by Plaintiff and are thus dismissed.

exculpatory evidence, rather than simply the names of officers with exculpatory information, can be grounds for an underlying constitutional violation.[2]

With a Policy and an underlying constitutional violation established, the remaining question is whether Plaintiff has sufficiently shown a causal connection between the two. To create such a connection, Plaintiff relies on two assumptions. Plaintiff's first assumption: the Policy's requirement that only those officers needed for the "successful prosecution of the case" be listed on the arrest warrant necessarily demands that any officer with exculpatory information be excluded from an arrest warrant. In short, "successful prosecution" means "conviction of defendant." "Conviction of defendant" requires the suppression of the name of an officer with exculpatory evidence.

Plaintiff's second assumption: by requiring exclusion of the officer because of his knowledge of exculpatory evidence, said exculpatory evidence is likewise necessarily excluded from the probable cause determination process. Thus, according to Plaintiff, this Policy requires officers to exclude exculpatory evidence from the probable cause determination process.

In conclusion, Plaintiff argues that the Policy (1) necessarily requires the exclusion of the names of officers with knowledge of exculpatory evidence from arrest warrants, and (2) thereby, also necessarily excludes exculpatory evidence from the probable cause determination process. In this case, Plaintiff specifically alleges that the Policy caused Defendants to withhold "exculpatory evidence in the form of 'a previous statement the complaining witness gave to other detectives'" during the probable cause determination process. (Pl. Resp. at 9.)

Defendants argue that "Detectives Keppol and Palumbo could have pressured a witness and withheld exculpatory evidence regardless of whether the City had instituted the overtime management policy identified in Plaintiff's complaint." (MJP at 5.) This is undoubtedly true. However, that is simply Defendants' theory of causation. Plaintiff's theory of causation is that the Policy caused the exclusion of the exculpatory evidence from the probable cause statement for the arrest warrant.

At this early stage of the proceedings, the Court finds that Plaintiff has sufficiently pled a causal connection between the Policy and the exclusion of exculpatory information. Thus,

---

[2] This holding is not in conflict with our sister court's ruling in *Whitehead v. City of Philadelphia*, 2014 WL 657486, at *2 (E.D. Pa. 2014). The Plaintiff in *Whitehead* did not allege a theory of liability related to the exclusion of exculpatory evidence from the probable cause determination process. On this distinct theory, the Court finds a well-pled constitutional violation.

Plaintiff's theory of liability that the City's Policy caused Defendants to exclude exculpatory evidence from the probable cause determination process was sufficiently pled to survive this Motion for Judgment on the Pleadings. However, all other theories of liability against the City are hereby dismissed.

### c. Claims against Commissioner Ramsey in his individual capacity shall be dismissed.

#### i. Standard of Review

In a civil rights case brought pursuant to 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under the color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). An individual state actor is liable under section 1983 only where he or she played an "affirmative part" in the alleged misconduct. *Mason v. City of Philadelphia*, 2014 WL 4722640, at *5 (E.D. Pa. 2014) (citing *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt,* 451 U.S. at 537 n. 3).

Plaintiff can allege that Cmmr. Ramsey is liable in two ways. First, personal involvement can be shown through allegations of "personal direction of or actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. A showing of actual knowledge must be made with "appropriate particularity." *Id.* Second, Plaintiff can also show supervisory liability by pleading that Defendants were policymakers who acted "with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm." *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989)).[3]

---

[3] The Third Circuit has expressed uncertainty as to the viability and scope of supervisory liability after the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *DiaLauri v. Mullen*, 563 Fed.Appx. 128, 131 n. 1 (3d Cir. 2014); *Argueta v. U.S. Immigr. & Customs Enforcement,* 643 F.3d 60, 70 (3d Cir. 2011); *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n. 8 (3d Cir. 2010). The Third Circuit recently addressed the concept of supervisory liability after *Iqbal* as it pertained specifically to Eighth Amendment claims. The Circuit held that "under *Iqbal,* the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319 (3d Cir. 2014). The Third Circuit specifically "left for another day" whether supervisory liability will continue to exist for other constitutional violations. *Id.*

### ii. Analysis

First, Plaintiff has failed to allege that Cmmr Ramsey had actual knowledge of any of the facts of this case. Thus, Plaintiff's theory must sound under the second type of supervisory liability: deliberate indifference to the consequences of establishing a policy.

Under this second theory, Plaintiff does allege that Cmmr Ramsey adopted the Policy. (Compl. ¶ 1.) The Court found, *supra*, that Plaintiff has pled facts sufficient to show that the Policy caused an underlying constitutional violation.

However, Plaintiff has alleged no facts to show deliberate indifference. The allegation that subordinates relied on the Policy to engage in allegedly unconstitutional behavior does not implicate their supervisor simply due to the fact that said person is their supervisor. *Respondeat superior* is not a basis of liability. The Complaint asserts no facts, just conclusory legal statements, in support of any finding of deliberate indifference. All claims against Cmmr Ramsey are hereby dismissed.

### d. Claims against P.O. Ashburn in his individual capacity shall be dismissed.

Plaintiff has not pled facts sufficient to support a claim against P.O. Ashburn. Plaintiff argues that the Court should delay decision on this Motion until after discovery, but before trial, pursuant to Federal Rule of Civil Procedure 12(i). (Pl. Resp. at 14.) Plaintiff argues that "Defendants identified Defendant, Ashburn, as a person likely to have discoverable information." (Pl. at 14.) Such potentiality is not sufficient to support allowing a claim completely devoid of any factual basis to persist. All claims against P.O. Ashburn are dismissed.

### IV. Conclusion

The Court GRANTS IN PART AND DENIES IN PART Defendants' Motion. First, the Court GRANTS IN PART AND DENIES IN PART said Motion regarding claims against the City. All claims against the City are dismissed **except** the claim regarding Plaintiff's theory of liability that the City's Policy caused Defendants to withhold exculpatory evidence from the probable cause determination process leading to the false arrest and false imprisonment of Plaintiff.

---

With this "uncertainty," district courts in this Circuit have continued to apply pre-*Iqbal* standards with caution. *See, e.g.*, *Pratt v. City of Philadelphia*, 2012 WL 592247, at *3 (E.D. Pa. 2012).

Second, the Court GRANTS said Motion regarding all claims against Cmmr Ramsey in both his official and individual capacities. All claims against Cmmr Ramsey are dismissed.

Third, the Court GRANTS said Motion regarding all claims against P.O. Ashburn. All claims against P.O. Ashburn are dismissed.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.